IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HOMEVESTORS OF AMERICA, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:25-CV-644-L** |
| | § | |
| **AMERICAN REIS LLC; EXTREME** | § | |
| **REIS; JEREMY GLICKMAN;** | § | |
| **KHURRAM RASOOL; FARHAD** | § | |
| **RASOOL; ROBERT WERNER; and** | § | |
| **FRANK WHITE,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Default Judgment ("Motion") (Doc. 15), filed June 26, 2025; and Plaintiff's Motion for Hearing on Pending Motion (Doc. 16), filed January 21, 2026. After careful consideration of the Motion, pleadings, the record, and applicable law, the court **grants in part and denies in part** the Motion (Doc. 15); and **denies as moot** Plaintiff's Motion for Hearing on Pending Motion (Doc. 16).

### I.    Background

On March 17, 2025, Plaintiff HomeVestors of America, Inc. ("Plaintiff" or "HomeVestors") brought this action against Defendants American REIS LLC, Extreme REIS LLC, Jeremy Glickman,[1] Khurram Rasool, Fahrad Rasool, Robert Werner, and Frank White (collectively, "Defendants" or "Reis Defendants") for trademark infringement, trademark dilution, false designation of origin, unfair competition, and copyright infringement, alleging that

---

[1] Defendants Jeremy Glickman and Robert Werner were dismissed from this action by Plaintiff on May 7, 2025, and are no longer parties to this action. Accordingly, the court's reference to "Defendants" or "REIS Defendants" refers to the remaining Defendants in this action.

Defendants copied HomeVestors' website, trademarks, copyrighted materials, and even HomeVestors' origin story to unfairly compete with HomeVestors. Plaintiff seeks a default judgment with respect to all of its claims against Defendants, an award of monetary damages, attorney's fees and costs, and a permanent injunction. As Plaintiff's Motion includes a request for a hearing to develop evidence supporting its claim for damages, attorney's fees, and costs, the court's focus here is only on its request for entry of a default judgment as to Defendants' liability for the claims asserted and a permanent injunction against Defendants.[2]  Plaintiff also recently filed a separate Request for Hearing on Pending Motion (Doc. 16) on January 21, 2026, out of concern regarding Defendants' continuing unlawful use of Plaintiff's registered marks and copyrighted materials; however, the court's ruling on Plaintiff's Motion for Default Judgment as to liability and the imposition of a permanent injunction **moots** that request.

## II.    Default Judgment

### A.  Legal Standard

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *See id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court has entered a default against Defendants (Doc. 14). Based upon the pleadings and information in the record, the court finds that Defendants are not minors, incompetents, or members of the United States military. Defendants, by failing to answer or otherwise respond to Plaintiff's Complaint, have admitted the well-pleaded

---

[2] Plaintiff contends that Defendants' conduct was willful, and that this is an "exceptional case." The court need not address these issues, as they pertain to damages and attorney's fees that will be addressed in a separate hearing. Moreover, these issues need further development, as the facts and legal authority relied on by Plaintiff in its Motion are conclusory and weak.

allegations of the Complaint and are precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). Stated differently, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted).

Accordingly, Defendants may not contest the "sufficiency of the evidence" on appeal, but they are "entitled to contest the sufficiency of the complaint and [the] allegations to support the judgment." *Id.*  Based on the well-pleaded allegations in Plaintiff's Complaint, which the court accepts as true, and the record in this action, the court, for the reasons herein explained, determines that Defendants are in default, and that Plaintiff is entitled to a default judgment.  *See United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citation omitted) ("A default judgment is a judgment on the merits that conclusively establishes the defendant's liability.").

**B. Requirements for Trademark Infringement, False Designation of Origin, and Unfair Competition**

Section 1114 of the Lanham Act covers trademark infringement claims, whereas § 1125 covers false designation of origin and unfair competition claims. The "central inquiry" with false designation of origin and unfair competition claims is "whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers." *Sun–Fun Prods., Inc. v. Suntan Rsch. & Dev., Inc.*, 656 F.2d 186, 192 (5th Cir. 1981) (citation omitted). "The factors relevant to this inquiry are essentially the same as those relevant in determining trademark infringement[.]" *Id.*

To recover on a claim of trademark infringement under the Lanham Act, a plaintiff must show that "(1) it possesses a legally protectable trademark" and (2) the defendant's use of the trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline*

*Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citation omitted). "To be legally protectable, a mark must be 'distinctive' in one of two ways": "(1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Id.* (citations omitted). Registration of a mark or marks constitutes "prima facie evidence that the marks are inherently distinctive." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (citation omitted).

To determine whether a defendant's use of a mark is likely to cause confusion, the Fifth Circuit uses a non-exhaustive list of factors referred to as "digits of confusion." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 10 F.4th 422, 427 (5th Cir. 2021) (citation omitted).  These factors or digits include: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Board of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (footnote and citation omitted).

Of the sixteen trademark registrations asserted against Defendants, all but two are incontestable.  In other words, "the registration[s] [are] conclusive evidence of the validity of the registered mark[s] and of the registration of the mark[s], of the registrant's ownership of the mark[s], and of the registrant's exclusive right to use the registered mark[s] in commerce." 15 U.S.C. § 1115(b).  Consequently, Plaintiff's pleadings and the record in this case establish that fourteen of the sixteen of the HomeVestors marks at issue were "inherently distinctive" at the time Plaintiff filed this lawsuit.  *Nola Spice Designs, LLC*, 783 F.3d at 537 (citation omitted). Plaintiff

**Memorandum Opinion and Order – Page 4**

is, therefore, the owner of and possesses "legally protectable trademark[s]" with respect to the registered marks.[3] *Streamline Prod. Sys., Inc.*, 851 F.3d at 450 (citation omitted).

Plaintiff contends, and the court agrees, that the allegations in its Complaint also support a finding of likelihood of confusion:

> The REIS Defendants have copied HomeVestors' content, origin story, and facts that apply to HomeVestors, but not the REIS Defendants. Dkt. 1 at 5-6 (Compl. ¶¶ 22-24). Further, HomeVestors' Complaint [alleges] that the REIS Defendants are in direct competition with HomeVestors in the residential real estate market. *Id.* at 6 (Compl. ¶ 26). The REIS Defendants intended to profit off of or otherwise benefit from HomeVestors' goodwill through their use HomeVestors' UGLY HOUSES Marks and HomeVestors' name and origin story. *Id.* at 6-9 (Compl. ¶¶ 27-36).

Doc. 15 at 4.

Plaintiff's Motion also includes the following screen shots taken from HomeVestors' internet homepage (image #1) and Defendants' internet homepage (image #2).

---

[3] Because Plaintiff's Motion focuses on the "inherently distinctive" and uncontestable nature of its registered marks without explaining why the remaining marks are also "legally protectable trademark[s]," the court's analysis is limited to Plaintiff's registered marks.

**Memorandum Opinion and Order – Page 5**

HOMEVESTORS' INTERNET HOMEPAGE



<u>DEFENDANTS' INTERNET HOMEPAGE</u>



Although the homepages are not exactly the same, and Defendants do not use "HOMEVESTERS" or the "WE BUY UGLY HOUSES" marks here, the caveman depicted on Defendants' internet homepage is identical to HomeVestors' registered Trademark No. 4,551,942, which has been used in the marketplace for years and is well known. Defendants' use of the identical mark would likely make it difficult for consumers to distinguish the services advertised and provided by Defendants from the services advertised and provided by HomeVestors,

particularly because these advertisements are visually similar in every other way.[4] Moreover, because both use the internet to target a similar market of consumers looking to sell their houses, this increases the likelihood of confusion. Thus, Plaintiff's allegations and the record in this case establish that Defendants are liable to HomeVestors for federal trademark infringement under 15 U.S.C. § 1114(1). For the same reasons, Defendants are liable to HomeVestors for false designation of origin and unfair competition under 15 U.S.C. § 1125(a), and Plaintiff is entitled to entry of a default judgment on both of these claims.

### C. Requirements for Trademark Dilution

Trademark dilution refers to "the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004) (citations omitted). Dilution cases frequently focus on whether the defendant "harm[ed] the reputation of the famous mark." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023) (quoting 15 § 1125(c)(2)(C)). Section 1125(c) provides for injunctive relief for trademark dilution:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

11 U.S.C. § 1125(c)(1). The statute defines "famous mark" and one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or

---

[4] Plaintiff alleges that it is also the owner of this trade dress consisting of a distinctive yellow scheme in which Ug Lee is depicted with the HomeVestors information, and it has used this trade dress in signage, billboards, print media, internet advertisements, and even painted on vehicles, but it is unclear whether this trade dress is among the three copyrighted and registered works that is the subject of Plaintiff's copyright infringement claim.

services of the mark's owner." *Id.* § 1125(c)(2)(A).  In determining whether a mark is famous, courts may consider all relevant factors, including:

> (i)    The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii)  The extent of actual recognition of the mark.
>
> (iv)   Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.*

> Subsection (c)(2) defines "dilution by blurring" and "dilution by tarnishing" as follows:
>
> (B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
>
>> (i)    The degree of similarity between the mark or trade name and the famous mark.
>>
>> (ii)   The degree of inherent or acquired distinctiveness of the famous mark.
>>
>> (iii)  The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
>>
>> (iv)   The degree of recognition of the famous mark.
>>
>> (v)    Whether the user of the mark or trade name intended to create an association with the famous mark.
>>
>> (vi)   Any actual association between the mark or trade name and the famous mark.
>
> (C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**Memorandum Opinion and Order – Page 9**

15 U.S.C. § 1125(c)(2)(B)-(C).

> With respect to its trademark dilution claim, Plaintiff contends:

> Based on the distinctiveness of the WE BUY UGLY HOUSES Mark, the duration and extent of advertising featuring the WE BUY UGLY HOUSES Mark, the nationwide geographic area in which HomeVestors and its franchisees advertise their real estate-related services under the WE BUY UGLY HOUSES Mark, the nature of the trade channels used to market such real estate-related services under the WE BUY UGLY HOUSES Mark compared to the trade channels through which the REIS Defendants market, intend to market, or are likely to market their services, the degree of public recognition of the WE BUY UGLY HOUSES Mark, and HomeVestors' numerous federal registrations for the WE BUY UGLY HOUSES Mark, the WE BUY UGLY HOUSES Marks have become famous, as that terms is used in Section 43(c) of the Lanham Act, and have been famous for years. The REIS Defendants' use of the WE BUY UGLY HOUSES mark and similar marks has diluted HomeVestors' famous WE BUY UGLY HOUSES mark by using the marks for their competitive residential real estate business. More specifically, the REIS Defendants confuse and deceive the public into believing that the REIS Defendants are affiliated with HomeVestors by using the WE BUY UGLY HOUSES famous marks. Ultimately, the REIS Defendants wrongful use dilutes HomeVestors' famous marks as would-be franchisees will not see the value in franchising with HomeVestors if their marks are readily usable by those without the history and reputation of HomeVestors.

Doc. 15 at 6-7.

The court agrees that Plaintiff's Complaint and the record in this case support a claim of trademark dilution. Specifically, the allegations in Plaintiff's Complaint establish that HomeVesters is known as the "We Buy Ugly Houses® people," and its "WE BUY UGLY HOUSES" mark and associated marks ("Registered Works"), which were published in 2004 and 2021, are famous and well-known nationwide, as HomeVestors has a network of approximately 1,000 franchises in 47 states and the District of Columbia, and it is frequently rated highly in industry publications. Additionally, HomeVestors' franchisees often renovate the houses they purchase before selling or renting them to others, and since at least 2000, HomeVestors has used the mark WE BUY UGLY HOUSES in connection with its franchising and real estate services.

**Memorandum Opinion and Order – Page 10**

From 2017 to the present, HomeVestors and its franchisees have spent over $550 million in advertising and promoting the brand HomeVestors using the HomeVestors marks.

Together, these and the other facts already discussed in connection with Plaintiff's other claims also establish the degree of similarities between HomeVestors' famous marks and the mark(s) used by Defendants; the degree of inherent distinctiveness of HomeVestors' famous marks; and the degree of recognition of HomeVestors' famous marks, which are instantly recognizable. Defendants' identical copying and use of one of HomeVestors' famous marks, and its copying the origin story on HomeVestors' website verbatim reflects their intention to create an association with HomeVestors' famous mark(s).

The court, therefore, determines that Plaintiff has satisfied the requirements for trademark dilution through blurring and is entitled to entry of default judgment as to this claim.

### D.     Requirements for Copyright Infringement

"To establish a claim for copyright infringement, a plaintiff must prove that: (1) [it] owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citation omitted). "Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities." *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).  "[C]opying usually may be inferred from proof of access to the copyrighted work and probative similarity." *King v. Ames*, 179 F.3d 370, 375 (5th Cir. 1999) (citation omitted). "[N]ot all copying is legally actionable as a copyright infringement. The party bringing the copyright claim must prove substantial similarity." *Id.* (citation omitted). The copyrighted work and the allegedly infringing work are substantially similar if "a layman would view [them] as substantially similar" on "side-by-side comparison."

*Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that it is the owner of three valid copyright registrations for works that are "highly original and contain creative expression and independent analysis"; that "Defendants copied and distributed the Registered Works on a consistent and systematic basis, without Plaintiff's authorization or consent: and that, because of the inclusion notices and warnings on Plaintiff's website and other publications, Defendants knew or they were on notice that the registered works were protected by the copyright laws, such that Defendants cannot assert a defense of innocent infringement. Doc. 1 at 12-13.  To establish copying and similarity, Plaintiff references Defendants' website— https://americanreis.com/—as proof that Defendants copied and distributed its Registered Works.

The court reviewed this website, but it currently does not look similar to any of the photos of HomeVestors' mark included in Plaintiff's pleadings and elsewhere in the record in this case. While Plaintiff lists in its Motion the three Registered Works that are copyrighted, it is not clear to the court whether these works correspond to the images in Plaintiff's pleadings it has identified as trademarks. Thus, based on available information, the court is unable to verify whether Defendants copied any of Plaintiff's three copyrighted Registered Works that are the subject of its copyright claim and whether there are any similarities between Plaintiff's Registered Works and the copies works.  For this reason, the court determines that Plaintiff is not entitled to a default judgment with respect to its copyright infringement claim.

## III.    Permanent Injunction

For relief, Plaintiff requests entry of a permanent injunction. A party is entitled to a permanent injunction when it demonstrates:

**Memorandum Opinion and Order – Page 12**

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

Plaintiff has shown that injunctive relief is appropriate in this case. First, Plaintiff has established that Defendants' use of its HomeVestors marks has caused irreparable injury. Specifically, Plaintiff has been irreparably injured by Defendants' use of a mark that consumers confuse for that of Plaintiff's HomeVestors marks.

Second, Plaintiff's injury is one that remedies at law cannot compensate, and the Fifth Circuit has recognized that, in cases such as this, money damages alone are normally not adequate because they do not prevent future infringing activity by the defendant. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013).

Third, enjoining Defendants from using Plaintiff's HomeVestors marks does not impose any hardship on Defendants so long as Defendants respect Plaintiff's intellectual property rights in such marks. Thus, the balance of hardships weighs in favor of granting Plaintiff's request for injunctive relief.

Finally, the court determines that Plaintiff's request for a permanent injunction will not disserve the public interest; rather, it will protect consumers from being misled or confused by Defendants' conduct in holding themselves out as franchisees of HomeVestors. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) (explaining that the Lanham Act requires a showing that the defendant's use "is likely to cause confusion, or to cause mistake, or to deceive," and "[t]he law of unfair competition has its roots in the common-law tort of deceit; its general concern is with protecting *consumers* from confusion as to source.").

**Memorandum Opinion and Order – Page 13**

The court also notes that, while it appears that Defendants voluntarily discontinued their infringing conduct in connection with their website sometime after this lawsuit was filed, this does not necessarily relieve a defendant from liability or an injunction. *See, e.g., Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998) (upholding district court's issuance of a permanent injunction and stating that simply ceasing the infringing activity does not allow an infringing party to escape liability). Given Defendants' decision to not participate in these proceedings or present evidence of their intentions to permanently cease their infringing conduct, the court cannot say that Plaintiff's request for a permanent injunction is moot or unnecessary, or that Defendants will continue to cease engaging in infringing conduct absent a permanent injunction.

The court, therefore, **grants** Plaintiff's request for a permanent injunction.

## IV.   Conclusion

For the reasons explained, Plaintiff's Motion for Default Judgment (Doc. 15) is **granted in part and denied in part**; and **denies as moot** Plaintiff's Motion for Hearing on Pending Motion (Doc. 16).  The Motion is **granted** with respect Defendants' liability as to all claims asserted by Plaintiff in this action, except Plaintiff's claim for copyright infringement. The Motion is also **granted** with respect to Plaintiff's request to permanently enjoin Defendants in connection with its federal claims for trademark infringement, false designation of origin, unfair competition, and trademark dilution, and Defendants American REIS LLC, Extreme REIS LLC, Khurram Rasool, Fahrad Rasool, and Frank White, and Defendants' officers, agents, servants, employees, and attorneys, and any other person acting in concert or participation with Defendants ("Defendants" or "REIS Defendants") are **permanently enjoined** from using HomeVestors Marks and the HomeVestors trade name and **shall**:

1. **immediately and permanently** remove any of HomeVestors' Marks or any colorable imitations from Defendants' website(s), signs, print advertisements, social media posts/sites, and anywhere else they are used in connection with the Defendants' business, the REIS Defendants' website at https://americanreis.com; and

2. **surrender or destroy** all materials in the REIS Defendants' possession, custody, or control bearing the HomeVestors Marks, including by removing all references to HomeVestors and removing the HomeVestors Marks from Defendants' websites and social media accounts/postings.

The court will enter a separate order, setting for hearing Plaintiff's request to recover damages and attorney's fees with respect to the claims on which it has prevailed.

**It is so ordered** this 30th day of March, 2026.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 15**